# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH DI COSOLA,<br>Individually and on behalf of a class, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 07 C 6746 |
| v. | ) ) | Judge Zagel |
| BRAZZAZ LLC, | ) ) | Magistrate Judge Denlow |
| Defendant. | ) ) | **ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW IN SUPPORT OF BRAZZAZ LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS

**DRINKER BIDDLE & REATH LLP**
Gordon B. Nash, Jr.
David S. Almeida
191 N. Wacker Drive, Suite 3700
Chicago, IL 60606
T: (312) 569-1000
F: (312) 569-3000

*Attorneys for Brazzaz LLC*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ..................................................................................................1

**STANDARD FOR DISMISSAL**...............................................................................................2

**ARGUMENT**..............................................................................................................................2

I. **THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF CANNOT STATE A CLAIM FOR A WILLFUL VIOLATION BY BRAZZAZ OF FACTA AS A MATTER OF LAW.** ......................2

    A. **It Is Not an Objectively Unreasonable Interpretation of FACTA to Permit the Printing of the Expiration Date if the Card Number Is Properly Truncated.** ...............................................................3

        1. *Safeco Establishes That a Defendant Does Not Willfully Violate FCRA If the Defendant's Actions Were Based on an Objectively Reasonable Interpretation of the Relevant Statutory Provision.*................................................................................3

        2. *Congressional Efforts to Clarify FACTA: The Credit and Debit Card Receipt Clarification Act of 2007.* ...........................................5

    B. **Plaintiff Has Not Alleged That Brazzaz Knew The Printing of the Expiration Date Held Any Risk of Potential Harm.**....................................9

II. **THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF DOES NOT ALLEGE ANY INJURY WHICH IS A PREREQUISITE TO RECOVERY.** .......................................................................10

III. **IN THE EVENT THAT THIS COURT IS NOT INCLINED TO DISMISS PLAINTIFF'S COMPLAINT, THE CASE SHOULD BE STAYED PENDING RESOLUTION OF THE BILL.** .............................................13

**CONCLUSION** ........................................................................................................................15

# **TABLE OF AUTHORITIES**

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007) ...................................................... passim

*Blahnik v. U.S. Bank Nat'l Assoc.*, No. 07-4344, slip op. (N.D. Ill. Dec. 20, 2007) ......................9

*BMW v. Gore*, 517 U.S. 559 (1996)................................................................................................11

*Crabill v. Trans Union, LLC* 259 F. 3d 662 (7th Cir. 2001)……..……………….....…..……....11

*Follman v. Village Squire, Inc.,* No. 07 C 3767, slip. op. (N.D. Ill. Dec. 18, 2007) ......................6

*Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91 (1979).…...……....…………..……...12

*Hernandez v. City of Gosden*, 324 F. 3d 535 (7th Cir. 2003) ..........................................................2

*Howard v. Hooters of Houston,* No. H-07-3399, slip op. (S.D. Tex. Apr. 5, 2008)…....…....….12-13

*Iosello v. Leibleys*, 502 F. Supp. 2d 782 (N.D. Ill. 2007) ..............................................................10

*Jackson v. Van Kampen Series Fund, Inc.*, No. 06-cv-944-DRH, 2007 WL
    1532090 (S.D. Ill. May 24, 2007) ........................................................................................13

*Landis v. North Am. Corp.*, 299 U.S. 248 (1936)..........................................................................13

*Levy v. Sterling Holding Co., LLC,* No. 00-994, 2004 WL 2251268 (D. Del. Sept. 27,
    2004)……………………………………………………………………………………13-15

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................................................................12

*Najarian v. Charlotte Russe, Inc.,* CV-07-501-RGK, slip op. (CTx) (C.D. Cal.
    Aug. 16, 2007) .........................................................................................................................4

*Pirian v. In-N-Out Burgers*, 2007 U.S Dist. LEXIS 25384 (C.D. Cal. Apr. 5,
    2007) .....................................................................................................................................10

*Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201 (2007) ....................................................... *passim*

*Sanders v. Jackson*, 209 F. 3d 998 (7th Cir. 2000)........................................................................5

*Schnadig Corp. v. Collezione Europa U.S.A.*, No. 01 C 1697, 2001 WL 766898
    (N.D. Ill. July 5, 2001) ..........................................................................................................13

*Sisseton-Wapheton Sioux Tribe v. United States*, 804 F. Supp. 1199, 1201 (D.S.D. 1992)……..13

*Soualian v. Int'l Coffee & Tea LLC*, No. 07-502-RGK, __ F. Supp. 2d __ (C.D.
    Cal. June 11, 2007) ...............................................................................................................12

*Spikings v. Cost Plus, Inc.*, No. 06-8125-JFW, ___ F. Supp. 2d ___ (C.D. Cal.
    May 25, 2007).......................................................................................................................12

S*tate Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).............................................11

*Tamari v. Bache & Co.*, 565 F. 2d 1194 (7th Cir. 1977) ..............................................................2

*TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985).......................................................10

*Walker v. Merck & Co., Inc.*, No. 05-CV-360-DRH, 2005 WL 1565839 (S.D. Ill.
    June 22, 2005).......................................................................................................................13

*Welsh v. Boy Scouts of Am.*, 993 F. 2d 1267 (7th Cir. 1993) .....................................…..............10

*Wojtczak v. Chase Bank USA, N.A.*, No. 06-C-987, 2007 WL 4232995 (E.D. Wisc. Nov. 27, 2007) ...................................................................................................... 10

## Statutes

15 U.S.C. § 1681c(g) ................................................................................................ *passim*

15 U.S.C. § 1681n ................................................................................................... 1,4,5

## Amendments

The Credit and Debit Card Receipt Clarification Act of 2007, H.R. 4008 110th Congress (1st Sess. 2007) …………………………………………………………… *passim*

## Rules

FED.R.CIV.P. 8(a)(2) ...................................................................................................... 2
FED.R.CIV.P.12(b)(6) .................................................................................................... 2

## Miscellaneous Authorities

*A Billion Dollar "Harm-Less" Lawsuit,* Ted Frank*,* American Enterprise Institute for Public Policy Research, October 31, 2007 ......................................................... 8

*Webster's Third New Int'Dictionary of the English Language* (1976 unabridged) ....... 5

*Mahoney Introduces Legislation To Protect Businesses From Frivolous Lawsuits,* October 30, 2007 ......................................................................................................... 7

*Credit and Debit Card Receipts Could Lead to Court,* National Small Business Association, Nov. 14, 2007 .................................................................................... 8

*NACS Supports Bill to Protect Retailers on Credit Card Receipts,* May 12, 2007…........…………………………………………………………………………9

*Receipts, Expiration Dates and FACTA,* Heather Mark, PhD, CISSP, CIPP., Transactionworld.com/articles/2007/October/security1.asp, October, 2007 ........................... 11

U.S. Chamber of Commerce,Uschambermagazine.com/content/0803_cr.htm, March 2008………………………………………………………………………..………..7

*Visa Personal Security Program,* Usa.visa.com/personal/security/visa_security_program.html………………………......11

**PRELIMINARY STATEMENT**

This Complaint is one of hundreds of virtually identical class action complaints filed throughout the country regarding a newly effective and largely untested statute, the Fair and Accurate Credit Transaction Act ("FACTA" or "15 U.S.C. § 1681c(g)"). By his Complaint, Plaintiff Joseph Di Cosola ("Plaintiff") alleges that Defendant Brazzaz LLC ("Brazzaz") violated FACTA by displaying the expiration date of his credit card on a receipt. Plaintiff does not set forth ***any*** allegations that Brazzaz did not properly truncate the card number to the last five digits or less, nor does Plaintiff allege that the printing of the expiration date resulted in ***any*** injury to him. Rather, he, on behalf of a putative class, seeks to recover statutory and punitive damages, as well as attorneys' fees and costs, for purported willful violations of a statute that has been publicly denounced by its own drafters as ambiguous and having the unintended effect of subjecting businesses – like Brazzaz – who have made good faith efforts to comply based on a reasonable interpretation of FACTA subject to excessive and unwarranted damages. (Ex. A.)[1]

Plaintiff's Complaint should be dismissed with prejudice for two reasons. First, further to the Supreme Court's recent decision in *Safeco Insurance Company of America v. Burr*, 127 S. Ct. 2201 (2007) ("*Safeco*"), Plaintiff has not (and cannot) plead a willful violation of FACTA as a matter of law. In light of *Safeco*, the relevant inquiry for purposes of a motion to dismiss is whether plaintiff has set forth allegations that defendant's actions were ***not*** consistent with an objectively reasonable interpretation of FACTA. Taking Plaintiff's allegations as true, Brazzaz printed the card expiration date on Plaintiff's receipt and properly truncated the credit card number. Brazzaz's alleged conduct is entirely consistent with an objectively reasonable interpretation of the statutory language.

Second, Plaintiff's attempt to recover potentially millions of dollars of statutory damages with absolutely no allegations (nor prospect) of actual injury is violative of basic and fundamental constitutional principles and tort law. Plaintiff's Complaint attempts to distort the realities of identity theft and credit card fraud. Simply put (and as numerous data security experts have stated), the display of an expiration date is of absolutely no significance to identity thieves. Moreover, since consumers (like Plaintiff) are insulated from liability by credit card companies' "zero liability" policies, there is little to no chance that these consumers could suffer any injury as a result of Brazzaz's alleged conduct. The currently pending amendment to

---

[1] FACTA is part of the Fair Credit Reporting Act ("FCRA"), which provides that any person who willfully fails to comply with its requirements is liable for "actual damages sustained by the consumer as a result of the failure on damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1)(A).

FACTA – the Credit and Debit Card Receipt Clarification Act of 2007 (the "Bill") (Ex. B) – would completely eviscerate FACTA cases (such as this one), and require plaintiffs attempting to sue for display of an expiration date to allege and to prove actual damages to be entitled to recover. Finally, in the event that this Court is not inclined to put an end to this case at this point, Brazzaz respectfully requests that the proceedings be stayed pending Congressional clarification of FACTA (via the Bill) by its drafters. Given the epidemic of FACTA cases in this District and across the country, not to mention the irreversible and harm that could befall Brazzaz, a stay pending clarification of FACTA is a prudent exercise of this Court's inherent powers.

## STANDARD FOR DISMISSAL

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." It is well-settled that a court, however, need not accept "mere unsupported conclusions of fact or mixed fact and law." *Tamari v. Bache & Co.*, 565 F. 2d 1194, 1198-1199 (7th Cir. 1977). Moreover, a complaint must be dismissed pursuant to Rule 12(b)(6) if it appears beyond doubt that the plaintiff cannot prove any set of facts that would entitle it to relief. *See, e.g., Hernandez v. City of Gosden*, 324 F. 3d 535, 537 (7th Cir. 2003). Similarly, a complaint should be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). As Plaintiff has not – and indeed cannot based on *Safeco* – set forth sufficient allegations that Brazzaz willfully or recklessly violated FACTA, the Complaint should be dismissed with prejudice.

## ARGUMENT

**I. THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF CANNOT STATE A CLAIM FOR A WILLFUL VIOLATION OF FACTA BY BRAZZAZ AS A MATTER OF LAW.**

The Complaint should be dismissed because Plaintiff has not (and cannot) plead *any* set of facts stating a plausible claim for a willful violation of FACTA. The Supreme Court's recent decision in *Safeco* establishes that a defendant does not willfully violate FCRA (of which FACTA is a part) if the defendant's actions were based upon an objectively reasonable interpretation of the statute. In this case, even accepting Plaintiff's allegations as true, the Complaint should nonetheless be dismissed because an objectively reasonable interpretation of FACTA is that the expiration date may be displayed on a receipt provided that the card number is truncated to the last five digits or less. As detailed below, Brazzaz's objectively reasonable

2

interpretation is supported by: (i) FACTA's statutory language; (ii) the pending Bill which would clarify that display of an expiration date (along side a properly truncated card number) is not a willful violation as a matter of law; (iii) the epidemic of FACTA lawsuits brought against merchants who reasonably believed they had complied with FACTA (or were unaware of it); and (iv) the considerable commentary documenting the merchant community's confusion about FACTA's requirements.

> A. **It Is Not an Objectively Unreasonable Interpretation of FACTA to Print the Expiration Date if the Card Number Is Properly Truncated.**
>
> > 1. *Safeco Establishes That a Defendant Does Not Willfully Violate FCRA If the Defendant's Actions Were Based on an Objectively Reasonable Interpretation of the Relevant Statutory Provision.*

In *Safeco*, the Supreme Court recently interpreted FCRA's willfulness provision and held that a willful violation of FCRA does not occur as a matter of law if the defendant's action were consistent with an objectively reasonable interpretation of the statute. 127 S. Ct. at 2205–10. In *Safeco*, plaintiffs applied for initial auto insurance premiums from numerous insurance companies, including Safeco. *Id.* When reviewing plaintiffs' applications, Safeco relied on consumer credit reports to deny plaintiffs the best rates possible. *Id.* Upon denial of their applications, Safeco did not send plaintiffs "adverse action notices," which plaintiffs asserted was a willful violation of FCRA. *Id.* Specifically, at issue was whether Safeco *willfully* violated the provision of FCRA that "requires, among other things, that 'any person who takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report' must notify the affected consumer." *Id.* at 2206 (citing 15 U.S.C. § 1681m(a)). Integral to that determination was whether Safeco properly interpreted a separate FCRA provision, § 1681a(k)(1)(B)(i), relating to "initial" rates. *Id.* at 2210–11. In examining that second provision, the Supreme Court held that Safeco *incorrectly* interpreted the language and therefore violated FCRA. *Id.* at 2211–12.

After holding that Safeco's reading of the relevant statutory provision was incorrect, the Court went on to examine whether that violation was "willful." The Court first determined that, under FCRA, "willfulness" is tantamount to "recklessness." *Id.* at 2209–10. The Court then delineated an *objective* two-prong test for courts to employ to determine if an alleged violation was willful or reckless:

3

> A company subject to FCRA does not act in reckless disregard of [FCRA] unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

*Id.* at 2215. In other words, a court first must determine whether the defendant's reading of the statute was "objectively unreasonable" and, if so, then the court should then examine whether the defendant, in fact, crossed the "line" from negligence (thereby permitting the recovery of actual damages under FCRA) to recklessness (thereby permitting statutory damages under FCRA). *See* 15 U.S.C. §§ 1681n(a) & 1681o(a).

Notably for purposes of the instant Motion, the Supreme Court in *Safeco* affirmed summary judgment without delving into the second "prong" because it determined, as a matter of law, that Safeco's interpretation of the statute was objectively reasonable:

> ***Here, there is no need to pinpoint the negligence/reckless line, for Safeco's reading of the statute, albeit erroneous, was not objectively unreasonable. . . .*** While we disagree with Safeco's analysis [of the statutory language], we recognize that its reading has a foundation in the statutory text.
>
> \* \* \* \* \*
>
> ***Safeco's reading was not objectively unreasonable, and so falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability.***

*Id.* (emphasis added) (internal quotations omitted). Because the Court determined as matter of law that Safeco could not have willfully violated FCRA based on plaintiffs' allegations, the Court stated that further factual development was unnecessary. *Id.* at 2216; *see also Najarian v. Charlotte Russe, Inc.,* No. CV-07-501-RGK (CTx) (C.D. Cal. Aug. 16, 2007 Order), at *3 (granting summary judgment on a similar FACTA claim because there was "no triable issue of fact as to the issue of willfulness") (a copy of all unpublished authority cited is attached collectively as Ex. C).

As Plaintiff cannot plead a willful violation of FACTA by Brazzaz as a matter of law, the principles of *Safeco* and *Najarian* are equally applicable at the pleading stage. In this case, Plaintiff states that: "[o]n February 21, 2007, [he] received from Brazzaz, a computer generated cash register receipt which displayed [his] American Express card expiration date." (Cplt. ¶ 17.) Taking this allegation as true, Plaintiff's Complaint should nonetheless be dismissed because he

4

can plead no set of facts showing Brazzaz's interpretation of FACTA was objectively unreasonable. The relevant statutory language of FACTA states:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number **_or_** the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. § 1681c(g) (emphasis added). The word "or" is a "disjunctive connector used to indicate a choice between alternate things, states or courses." *Webster's Third New Int'l Dictionary of the English Language* at 1667 (1976 unabridged); *see also Sanders v. Jackson*, 209 F. 3d 998, 1000 (7th Cir. 2000) (stating that courts "frequently look to dictionaries to determine the plain meaning of words"). It is not objectively unreasonable to conclude that the use of the word "or" denotes a choice between two alternative things: no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number **_or_** the expiration date.[2]

Therefore, taking Plaintiff's allegations as true, Plaintiff's Complaint should be dismissed because it was not an objectively unreasonable interpretation of FACTA to truncate the card number to the last five digits or less and display the expiration date. As set forth below, that objectively reasonable interpretation of FACTA is supported by (i) pending legislation aimed at clarifying FACTA (the Bill); (ii) considerable commentary evidencing the merchant community's understandable confusion regarding FACTA; (iii) experts that have consistently stated that an expiration date is *not* sufficient to commit identity theft and credit card fraud; and (iv) explicit acknowledgements by FACTA's principal drafter that the statute is ambiguous and that Congress did not intend to create the epidemic of class action lawsuits that is currently plaguing the federal judiciary.

---

[2] Section 1681c(g) is the only part of FCRA whereby FACTA plaintiffs assert that "or" really means "and." For instance, § 1681(n) – entitled "Civil Liability for Willful Noncompliance" – provides for "any actual damages sustained by the consumer as a result of the failure **_or_** damages of not less than $100 and not more than $1,000." Unlike § 1681c(g), no one is claiming that, with respect to § 1681(n), "or" actually means "and." (*See* Cplt. ¶ 43.)

>   2.   *Congressional Efforts to Clarify FACTA: The Credit and Debit Card Receipt Clarification Act of 2007.*

On October 30, 2007, Congressman Tim Mahoney introduced the Credit and Debit Card Receipt Clarification Act of 2007. H.R. 4008, 110th Congress (1st Sess. 2007). (*See* Ex. B.) The bipartisan Bill[3] seeks to amend FCRA to "make technical corrections to the definition of willful non-compliance with respect to violations involving the printing of an expiration date on certain credit and debit card receipts before the date of the enactment of this Act." (*Id.* at 2.) The Bill states that FACTA was poorly drafted and that many businesses *reasonably interpreted* the statute to permit the printing of the expiration date:

> ***Many merchants understood that [FACTA] would be satisfied by truncating the account number down to the last 5 digits based in part on the language of the provision as well as the publicity in the aftermath of the passage of [FACTA].***
>
> Almost immediately after the deadline for compliance passed, hundreds of lawsuits were filed alleging that the failure to remove the expiration date was a willful violation of [FCRA] even where the account number was properly truncated. Experts in the field agree that proper truncation of the card number, by itself as required by [FACTA], regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud.

(*Id.* at 2:18–3:10) (emphasis added.)

The stated purpose of the Bill is to "ensure that consumers suffering from any actual harm to their credit or identity are protected while ***simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers***." (*Id.* at 3:17–22) (emphasis added.) In light of those objectives, the Bill would amend FCRA by adding a new subsection entitled "Clarification of Willful Noncompliance:"

> For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection, but otherwise complied with the requirements of [§ 1681c(g)] for such receipts ***shall not be***

---

[3]   Since its introduction, the Bill has received considerable bipartisan support. As of the date of this filing, **47** representatives have publicly announced their support of the Bill.

> *in willful noncompliance with [§ 1681c(g)] by reason of printing such expiration date on the receipt.*

(*Id.* at 4:7–15) (emphasis added.) Notably, the Bill would have retroactive effect and would completely eviscerate the vast majority of frivolous FACTA claims (including this one) that allege only that the defendant displayed the expiration date.[4] (*See id.* at 4:16–22 (stating that the Bill "applies without regard to whether such action is brought before or after the date of the enactment of this Act")); *see also Mahoney Introduces Legislation To Protect Businesses From Frivolous Lawsuits,* October 30, 2007 ("Rep. Mahoney's legislation would amend FACTA to make it clear that if a company properly truncated a consumer's credit card number but did not remove the expiration date, such action is not a willful violation of FACTA. ") (Ex. D); (U.S. Chamber of Commerce, http://www.uschambermagazine.com/content/0803_cr.htm (last visited Apr. 12, 2008) (recognizing that the Bill would "close[] the loophole of a well-meaning law that led to small businesses being hit with abusive lawsuits even where no evidence of fraud or harm exists").)

Lest there be any doubt of FACTA's vagaries (and the resultant unintended consequences), Congressman Spencer Bachus, the ranking member of the House Committee on Financial Services and one of FACTA's principal drafters recently stated that the statute is not clear and that the recent epidemic of lawsuits over the display of the expiration date is directly contrary to Congressional intent. Specifically, on January 23, 2008, Congressman Bachus wrote to Congressman Barney Frank, Chairman of the House Committee on Financial Services, urging the Bill's expeditious enactment:

> As you may be aware, an unfortunate spate of federal class action lawsuits is currently pending throughout the country in which hundreds of companies, both large and small, face claims alleging willful violations of provisions in FACTA requiring the truncation of certain information on the receipts of debit and credit card transactions. ***Even though these companies believed they were complying with the law by truncating account numbers on receipts, the suits allege that by failing to remove the expiration dates as well, these companies willfully violated the statute.***

---

[4] Brazzaz is aware of Judge Kendall's opinion in *Follman v. Village Squire, Inc.*, in which she stated that "[e]ven if [she] were to consider the Bill in reaching [her] decision, [the Bill] would only bolster [her] conclusion that printing an expiration date on any receipt provided to a customer cardholder constitutes a violation of § 1681c(g)" because the "Bill would *not* amend that section." No. 07 C 3767, slip op., at *7 n.3 (N.D. Ill. Dec. 18, 2007). The Court in that case was evidently not apprised of the fact that after enactment of the Bill, plaintiffs will have to allege and to prove actual damages (*i.e.*, identity theft or credit card fraud) to recover anything for display of an expiration date. (*See* Ex. A at 4:7-15.)

7

> *As one of the principal authors of FACTA, I assure you that this was not the intent of the drafters of the legislation.*
>
> *Businesses that have made good faith efforts to comply with FACTA based on a reasonable interpretation of their statutory obligations should not be subject to statutory damages intended for willful violations.*

(Ex. A) (emphasis added.) Thus, the Bill and one of FACTA's principal drafters unequivocally support the conclusion that merchants – like Brazzaz – who properly truncated the credit card number and displayed the expiration date could not have willfully violated such a vague and ambiguous statute as a matter of law.

Notably, nearly every FACTA commentator has observed that § 1681c(g) contains a grammatical error that renders the language of the statute vague and ambiguous:

> For reasons not in the record of any of the cases, *much of the retail industry interpreted FACTA to permit the printing of the credit card and debit card receipts that included up to five digits of the credit card number and the expiration date.* Plaintiffs argue that printing the expiration date alone violates the ambiguous statute. *Absolutely no identity theft can possibly take place from an expiration date, and no one claims otherwise. But with no dispositive court or regulatory ruling on the meaning of "or," and millions of potential violations occurring every day in the first few weeks after FACTA took effect, the entrepreneurial trial bar sensed an opportunity.*

(Ted Frank, *A Billion Dollar "Harm-Less" Lawsuit*," American Enterprise Institute for Public Policy Research, October 31, 2007, at 1 (emphasis added) (Ex. E); *see also* National Small Business Association, *Credit and Debit Card Receipts Could Lead to Court*, Nov. 14, 2007 ("Unfortunately, the Bill was written in such a vague way that many businesses thought they were in compliance by printing only the last five digits of the card number and the expiration date . . . . Legislation has recently been introduced in the House that would clarify the situation.") (Ex. F). These pronouncements further affirm the conclusion that Brazzaz's conduct (as alleged in Plaintiff's Complaint) was *not* objectively unreasonable.

The nationwide epidemic of putative class action lawsuits further demonstrates that FACTA's requirements are far from clear. Since the December 4, 2006 effective date for FACTA, 85 putative class action complaints have been filed in this District alone, (Ex. G), and there are in excess of 300 cases currently pending throughout the country. Notably, the *vast*

8

majority of these lawsuits allege willful violations based on allegations that the defendant did not properly mask the expiration date. The sheer number of FACTA class actions clogging the federal judiciary further supports the notion that these merchants reasonably interpreted FACTA to permit the display of the expiration date if the card number was properly truncated. Notably, each and every FACTA complaint fails to explain how its claim is even remotely plausible as it defies logic to suggest that any defendant (including Brazzaz) willfully decided to incur potential liability of between $100 to $1,000 per receipt by allegedly printing the months and years in which its customers' credit cards expire. Plaintiff does not allege that Brazzaz benefited in any way from allegedly allowing this information to be printed.

Moreover, because no FACTA plaintiff alleges that he or she suffered *any* actual harm, it is clear that opportunistic plaintiffs are seeking to take advantage of a poorly worded statute to their own (and their lawyers') advantage. The concern that provisions of FCRA (like FACTA) would be utilized to generate exorbitant legal fees in the notable absence of *any* harm was the impetus for Judge Shadur's recent observations in *Blahnik v. U.S. Bank National Association*:

> Congress' understandable (and entirely appropriate) concern for the rights of consumers and other members of the general public . . . has led to the adoption of a substantial amount of protective legislation, a prime example of which is the Fair Credit Reporting Act. ***But regrettably the salutary purposes of such legislation have sometimes been diluted by the cottage industry that has consequently developed within the legal profession, some of whose members seem to exhibit more solicitude for the generation of legal fees than for the greater good of their clients – a situation that may call for special scrutiny in the area of the putative class action.***

No. 07-4344, slip op., at *1 (N.D. Ill. Dec. 20, 2007); *see also* Ex. H, *NACS Supports Bill to Protect Retailers on Credit Card Receipts*, May 12, 2007 ("Despite repeatedly being denied class certification, the continuing tide of lawsuits represents a significant burden on the hundreds of retailers that have been sued without any corresponding consumer protection benefit."). Judge Shadur's concern about a cottage legal industry seemingly more concerned about the generation of legal fees is particularly prescient in FACTA cases. The nationwide epidemic of FACTA cases further supports the conclusion that Brazzaz's conduct (as alleged by Plaintiff) was not an objectively unreasonable interpretation of FACTA.

### B. Plaintiff Has Not Alleged That Brazzaz Knew The Printing of the Expiration Date Held Any Risk of Potential Harm.

Although, based on the foregoing, this Court need not address the second prong of the *Safeco* test, it is equally clear that Plaintiff has not alleged sufficient facts to establish a plausible claim on its face that Brazzaz acted in a manner "entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco,* 127 S. Ct. at 2215; *Bell Atlantic Corp.*, 127 S. Ct. at 1974. Plaintiff alleges that "[o]n information and belief" Brazzaz "knew of the truncation requirement" because "[t]he requirement was widely publicized among retailers." (Cplt. ¶¶ 33 & 35.)[5] Pursuant to *Safeco*, however, a violation of FACTA cannot be willful simply because a defendant knew of the application of the act. *See Safeco*, 127 S. Ct. at 2215 (rejecting argument that defendant willfully violated act even though defendant knew of act); *TransWorld Airlines, Inc. v. Thurston,* 469 U.S. 111, 127 (1985) ("We are unpersuaded by respondent's argument that a violation of the Act is 'willful' if the employer simply knew of the potential applicability of the ADEA"). Simply put, Plaintiff's allegations do not give rise to a plausible claim that Brazzaz willfully violated FACTA. *Bell Atlantic Corp.*, 127 S. Ct. at 1974.

Plaintiff has not alleged (and cannot do so) that Brazzaz willfully violated FACTA and, therefore, the Complaint should be dismissed with prejudice. *See, e.g., Wojtczak v. Chase Bank USA, N.A.*, No. 06-C-987, 2007 WL 4232995, at *4 (E.D. Wis. Nov. 27, 2007) (dismissing FCRA complaint and stating that even if bank-defendant's reading of FCRA was wrong, the complaint should still be dismissed because its reading of the statute was not unreasonable). If plaintiffs can force their way into a class action lawsuit by saying that a certain prospective FACTA defendant "must have known," then FACTA is essentially a strict liability statute. As set forth above, that was clearly not the intent of its drafters.[6]

---

[5] Oddly, many of the paragraphs discussing the alleged widespread distribution of FACTA's requirements discuss state law requirements as well as various private companies' requirements. (*See, e.g.*, Cplt. ¶¶36-37.)

[6] Brazzaz is mindful of certain non-binding decisions holding that it is a violation of FACTA to print the expiration date regardless of the truncation of the card number. Brazzaz respectfully submits that courts should not rewrite the plain language of the statute to fit the plaintiffs' bar's interpretation. *See, e.g., Welsh v. Boy Scouts of Am.*, 993 F. 2d 1267, 1271 (7th Cir. 1993). Notably, in each and every decision interpreting FACTA, courts have used the word "and" to explain what they believe the statute proscribes. In *Iosello v. Leibleys*, for example, the court stated: "[t]he plain meaning of the statute is that a merchant shall not print more than the last 5 digits of the credit card number upon any receipt ***and*** a merchant shall not print the expiration date upon any receipt." 502 F. Supp. 2d 782, 786 (N.D. Ill. 2007); *see also Pirian v. In-N-Out Burgers*, 2007 U.S Dist. LEXIS 25384, at *8 (C.D. Cal. Apr. 5, 2007) (same). These cases – decided without the benefit of the authorities discussed in this Memorandum – blatantly rewrite the statute from the disjunctive to the conjunctive. At a minimum, however, these cases, coupled with the authorities described in detail below, establish that there was considerable confusion regarding FACTA's putative requirements.

## II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF DOES NOT ALLEGE ANY INJURY WHICH IS A PREREQUISITE TO RECOVERY.

Plaintiff's Complaint should be dismissed for the additional reason that recovery of excessive statutory damages without any allegations of actual harm is contrary to constitutional principles embraced by the United States Constitution and the Supreme Court. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 412 (2003) (stating that "to the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property"); *BMW v. Gore*, 517 U.S. 559, 587 (1996) ("This constitutional concern . . . arises out of the basic unfairness of depriving citizens of life, liberty or property, through the application, not of law and legal process, but of arbitrary coercion."). Similarly, the Seventh Circuit has noted that statutory damages must be based on an actual injury. *See, e.g., Crabill v. Trans Union, LLC,* 259 F. 3d 662, 665 (7th Cir. 2001) ("The award of statutory damages could also be thought a form of bounty system … provided the bounty is a reward for redressing an injury"). Actual harm is essential to any recovery and Plaintiff's inability to allege harm warrants dismissal of this case.

Although often confused,[7] identity theft is "a crime in which an imposter obtains key pieces of personal identifying information such as Social Security numbers and driver's license numbers and uses them for personal gain." Data security experts have repeatedly testified "to the fact that the likelihood of committing identity theft with a truncated account number and an expiration date is negligible." (*See*, *e.g.*, Heather Mark, PhD, *Receipts, Expiration Dates and FACTA*, http://www.transactionworld.com/articles/2007/October/security1.asp) (last visited April 12, 2008) (Ex. I.) The reasoning behind this is simple; an expiration date (unlike Social Security and driver's license numbers, for example) is not sensitive enough information to perpetrate identity theft.

In contrast to identity theft, credit card fraud typically occurs in "card-not-present transactions," which are card transactions that take place over the phone or in the e-commerce environment. To consummate these fraudulent transactions, the perpetrator must have, at a minimum, *the name on the card and the complete credit card number*. Notably, an exact match of the cardholder's expiration date is typically *not* required for such "card not present"

---

[7] For instance, Plaintiff's Complaint states that the purpose of the truncation requirement is to prevent identity theft. (Cplt. ¶ 4.) As set forth herein, the display of an expiration date is of absolutely no consequence to identity thieves. Brazzaz concedes the veracity of Plaintiff's unsubstantiated and erroneous allegations for purposes of this motion to dismiss only.

11

transactions. Rather, a valid one – *i.e.*, a date occurring in the future – is all that is required. (*See, e.g.*, http://usa.visa.com/personal/security/visa_security_program.html (last visited Mar. 18, 2008) (stating that a "valid expiration date is a requirement").)

As there is no basis to conclude that identity theft could be achieved based on display of an expiration date, and the likelihood of credit card fraud is *de minimis*, there is quite simply no conceivable way that Plaintiff could have suffered any harm as a result of the conduct alleged in the Complaint. This is particularly true because the vast majority of the major credit card companies (including American Express) have "zero-liability" policies by which cardholders are not responsible for any fraudulent charges on their credit cards. Thus, in the highly unlikely event that any credit card fraud could be perpetrated, consumers are completely insulated from even the potentiality of harm.

It is therefore little wonder that the only federal courts to address the issue have recognized that it is virtually impossible for the inclusion of the expiration date on a credit card or debit card receipt to result in identity theft or any other actual harm. *See, e.g., Soualian v. Int'l Coffee & Tea LLC*, No. 07-502-RGK, __ F. Supp. 2d __ (C.D. Cal. June 11, 2007) ("it appears virtually impossible for the inclusion of the expiration date on a credit card or debit card receipt to result in identity theft or any other actual harm."); *Spikings v. Cost Plus, Inc.*, No. 06-8125-JFW, ___ F. Supp. 2d ___ (C.D. Cal. May 25, 2007) ("it appears unlikely, if not impossible, for the inclusion of the expiration date on a credit card or debit card receipt to result in identity theft or any other actual harm."). Given the foregoing, it strains any concept of legality and reason to conceive of how Plaintiff (as well as a putative class) have any injury sufficient to confer standing. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (stating that without an allegation of any harm, plaintiff lacks standing to sue since he has not suffered an "injury in fact"- a harm that is actual, or imminent, not conjectural or hypothetical) (internal citations and quotations omitted); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) (though "Congress may, by legislation expand standing … Plaintiff must always have a distinct and palpable injury to himself.").[8]

---

[8] Moreover, Brazzaz submits that consideration of these concerns is not premature at the pleading stage. Indeed, defendants like Brazzaz should not be forced – as a result of the prospect of potentially annihilating damages without any concomitant allegation of injury – into settling or defending such an extortionate lawsuit. *See Bell Atlantic,* 127 S. Ct. at 1966 (recognizing how "a plaintiff with a largely groundless claim" can "take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.") (internal citations and quotations omitted).

12

The sheer lunacy of these FACTA cases was recently (and colorfully) detailed in an opinion by Judge Hughes. In his opinion dismissing a nearly-identical FACTA claim, Judge Hughes observed that:

> [Plaintiff] was not injured as a consequence of the date shown on his receipt from Hooters – no fraud, no sleepless nights, nothing.
>
> * * * * *
>
> [Plaintiff] does not represent a class of victims. He has no injury of his own, and he has no idea of anything in Hooter's practices to suggest that it was willful in the legal sense. If he had written Hooters to remind it of the illegality of the date on the receipt, the problem would have been solved. He will take nothing from Hooters.

*Howard v. Hooters of Houston*, No. H-07-3399, slip op., at *1 (S.D. Tex. Apr. 5, 2008) (internal citations omitted) (emphasis added). Without even the prospect of injury, Brazzaz respectfully submits that this case should be dismissed with prejudice.

### III. IN THE EVENT THAT THIS COURT IS NOT INCLINED TO DISMISS PLAINTIFF'S COMPLAINT, THE CASE SHOULD BE STAYED PENDING RESOLUTION OF THE BILL.

In the event that this Court is not inclined to put an end to this case at this point, Brazzaz respectfully requests that this Court exercise its inherent powers to stay the proceedings pending resolution of the Bill. *See, e.g., Landis v. North American Corp.*, 299 U.S. 248, 254 (1936) (stating that the power to grant a stay is "incidental to the power inherent in every court to control the disposition of the cases on its docket with economy and effort for itself, for counsel, and litigants").[9]

In *Levy v. Sterling Holding Co., LLC*, defendant sought a stay after the close of discovery based on certain proposed clarifying amendments to the Securities and Exchange Act of 1934.

---

[9] *See also Schnadig Corp. v. Collezione Europa U.S.A.*, No. 01 C 1697, 2001 WL 766898, at *2 (N.D. Ill. July 5, 2001) (staying action and recognizing that the court "has broad discretion to stay proceedings as an incident to its power to control its own docket"); *Jackson v. Van Kampen Series Fund, Inc.*, No. 06-cv-944-DRH, 2007 WL 1532090 (S.D. Ill. May 24, 2007), at *2 (granting, *sua sponte*, stay because upcoming appeals "will have significant effect on the ultimate disposition of the [case]"); *Walker v. Merck & Co., Inc.*, No. 05-CV-360-DRH, 2005 WL 1565839 (S.D. Ill. June 22, 2005), at *2 (granting stay; "[i]n short, on balance, the Court believes that the interest of judicial economy and the threat of inconsistent rulings outweigh the prejudice to Plaintiffs"); *Sisseton-Wapheton Sioux Tribe v. United States*, 804 F. Supp. 1199, 1201 (D.S.D. 1992) (granting motion to stay proceedings pending promulgation of clarifying regulations by National Indian Gaming Commission).

13

No. 00-994, 2004 WL 2251268, at *2 (D. Del. Sept. 27, 2004). Rejecting plaintiff's arguments that the stay would be open-ended and prejudicial, the *Levy* Court entered the stay in order for the clarifying amendments to be resolved. *Id.* In so doing, the court observed that:

> [s]taying the litigation until the SEC decides whether to adopt the proposed amendments [] will simplify the issues in this case and focus the litigation. . . . ***A stay will conserve the resources of the parties and the court*** . . . . If the proposed amendments are rejected, the court will proceed with the case . . . ***Not staying the proceedings, however, runs the risk of inconsistent adjudications.***
>
> * * * * *
>
> ***By staying the action and awaiting the decision of the SEC, in the event of adoption, a further conflict with other circuit courts that will have to apply amended SEC Rules [] may be avoided.***

*Id.* (emphasis added).

As detailed above, enactment of the Bill will have a profound impact on the current nationwide epidemic of over 300 FACTA lawsuits, the vast majority of which solely allege that the defendant violated the statute by displaying the expiration date. The bipartisan Bill (currently before the House Subcommittee on Financial Institutions and Consumer Credit) will have retroactive effect and require putative plaintiffs attempting to sue for display of an expiration date to allege (and ultimately to prove) actual harm to be entitled to any recovery. (Ex. B, Bill at 4:7–22.)  Issuance of a stay pending disposition of the Bill is a reasonable and prudent exercise of this Court's inherent power to control its docket and to effect justice.  The opportunistic lawsuits occasioned by legislative missteps are best remedied by Congress for they know better than anyone what they meant. (*See, e.g.*, Ex. A, Congressman Bachus' January 23, 2008 Letter (stating that "[a]s one of the principal authors of FACTA, I assure you that this was not the intent of the drafters of the legislation").)

Moreover, a consideration of the hardships clearly favors issuance of a stay.  As noted above, Plaintiff has not set forth a single allegation of harm caused by the alleged display of his card's expiration date.  Despite the fact that experts in the industry agree that the display of an expiration date alongside a properly truncated number is of no consequence, defendants – such as Brazzaz – are placed in the unenviable situation of either capitulating to a coercive settlement or expending tremendous amounts of time, energy, and resources defending themselves against the specter of annihilating damages. *See, e.g.*, *Bell Atlantic Corp.*, 127 S. Ct. at 1967 (observing that

14

"the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings"). Notably, none of the harm foisted upon Brazzaz can be undone at a later date, even if the Bill is enacted. Thus, although the Bill will have retroactive application (thereby wiping out Plaintiff's "case"), Brazzaz cannot get back the time, effort, and other resources expended in defending itself.

Conversely, Plaintiff will not suffer *any* harm pending congressional clarification of FACTA. Because Plaintiff has not alleged any actual damages, he cannot say that he will be prejudiced by a stay other than Congress may (via the Bill) take away his (and his counsel's) proverbial "lottery ticket." The mere fact that a stay will delay an action is insufficient to show prejudice, since a slight delay is inherent to every stay and is outweighed by the benefit to the parties and this Court. Accordingly, Brazzaz respectfully submits that, at a minimum, this case should be stayed pending resolution of the Bill.[10]

## CONCLUSION

For the foregoing reasons Defendant, Brazzaz LLC respectfully requests that this Court dismiss Plaintiff's putative Class Action Complaint with prejudice or, alternatively, stay the proceedings pending resolution of the Bill.

Dated: April 15, 2008

Respectfully submitted,

**BRAZZAZ LLC**

/s/ David S. Almeida
   One of Its Attorneys

Gordon B. Nash, Jr.
David S. Almeida
**DRINKER BIDDLE & REATH LLP**
191 N. Wacker Drive, Suite 3700
Chicago, IL 60606
(312) 569-1000 (telephone)
(312) 569-3000 (facsimile)

*Attorneys for Brazzaz LLC*

---

[10] Although Plaintiff would not be prejudiced by a stay, Brazzaz, in an attempt to ameliorate any conceivable harm, suggests that the parties convene in 90 days to apprise this Court of any developments regarding the Bill. Should there be any significant developments in the interim, counsel for Brazzaz will, of course, apprise this Court and Plaintiff's counsel immediately.

15

## **CERTIFICATE OF SERVICE**

I, David S. Almeida, hereby certify that on April 15, 2008, the foregoing **Memorandum of Law in Support of Brazzaz LLC's Motion to Dismiss or, in the Alternative, to Stay Proceedings** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ David S. Almeida

CH02/ 22519737.7