**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSEPH DI COSOLA,** | ) | |
| **Individually and on behalf of a class,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Case No. 07 C 6746 |
| v. | ) | |
| | ) | Judge Zagel |
| **BRAZZAZ, LLC,** | ) | Magistrate Judge Denlow |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Plaintiff Joseph DiCosola submits his memorandum of law in opposition to defendant Brazzaz, LLC's ("Brazzaz") motion to dismiss Plaintiff's Class Action Complaint.

**PRELEIMINARY STATEMENT**

In order to protect credit and debit cardholders like Plaintiff from identity theft, Congress, in 2003, enacted the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA"). The key provision of FACTA states that:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

15 U.S.C. §1681c(g). Congress gave vendors more than three years to comply with FACTA, as it did not become effective until December 4, 2006. In addition to this lengthy compliance period of time, the credit card issuers, vendors of cash registers, and vendors of credit card swipe machines made well publicized statements of the necessity for merchants to comply with FACTA and indeed had the contractual requirements that necessitated merchants such as Brazzaz to be compliant with FACTA by December 4, 2006.

Despite these efforts, on February 17, 2007, in clear violation of the plain language of FACTA, Brazzaz issued Plaintiff computer-generated cash register receipts displaying Plaintiff's American Express card expiration date. Based on the foregoing violations of FACTA, Plaintiff brought this action on behalf of all credit and debit cardholders to whom Brazzaz provided an electronically printed receipt after December 4, 2006, which receipt displays either: (a) more

than the last five digits of the person's credit card or debit card number; and/or (b) the expiration date of the person's credit or debit card.

Defendant now moves to dismiss the action using a kitchen sink approach, arguing that: (i) Plaintiff has failed to plead a "willful violation" of the statute; (ii) FACTA is vague and unenforceable; and (iii) Plaintiff has failed to plead an injury sufficient to have standing to bring this action. Each and every one of Brazzaz's arguments has been raised before courts of this district and districts across the country, and each and every time they have been rejected out of hand. It is of no wonder that Brazzaz cites no cases directly addressing the FACTA claims at issue here. Defendant's motion is without support in the law or the facts and should be denied.

Brazzaz also seeks to stay this action until Congress acts upon a potential amendment to FACTA that is currently wallowing in committee. There is no indication of if or when it will ever reach the floor of Congress, or in what form it will take if it ever gets that far. As courts have long held, open-ended and possibly protracted stays, such as the one sought here, are disfavored. Moreover, Defendant failed to meet his burden of demonstrating a clear case of hardship or inequity and the request for a stay should be denied.

## STATEMENT OF FACTS

In 2003 Congress passed FACTA, making illegal for all businesses that accept debit and credit cards to:

> print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

¶ 27.[1] Congress gave merchants who accept credit cards and/or debit cards over three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006. ¶¶ 28, 32.

Shortly after the Congress passed FACTA, Visa, MasterCard, the PCI Security Standards Council (a consortium founded by Visa, MasterCard, Discover, American Express and JCB), and the companies that sell cash registers and other devices for the processing of credit or debit card payments informed Defendant about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and the prohibition on the printing of expiration dates. Moreover, each of these entities informed Defendant of its need to comply with FACTA. ¶ 34.

Moreover, on March 6, 2003, the CEO of Visa USA, Carl Pascarella, stated:

---

[1] References to the Complaint are denoted as ¶ __.

2

> Today, I am proud to announce an additional measure to combat identity theft and protect consumers. <u>Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether</u> . . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals.

¶ 36 (quoting a March 6, 2003 PR NEWSWIRE press release entitled "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein") (emphasis added).

Within 24 hours of Visa's March 2003 announcement, MasterCard and American Express announced they were imposing similar requirements. ¶ 37. Furthermore, Visa, American Express, and MasterCard continued to press merchants and businesses that accepted their cards to comply with FACTA after March 2003. For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p.62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt." Moreover the Rules expressly state "the expiration date should not appear at all." The Rules also included a picture of a compliant receipt showing precisely what had to be removed. Under the Rule, VISA required complete compliance with FACTA by July 1, 2006, five months ahead of the statutory deadline. ¶ 38. American Express's manual contains a similar depiction of what information must be suppressed on receipts. ¶ 40.

Despite being fully aware, willful, or reckless in not complying with FACTA's full truncation requirements and the prohibition on publishing the expiration date on a customers credit or debit card receipt, on February 17, 2007, and in clear violation of the plain language of FACTA, Brazzaz issued Plaintiff computer-generated cash register receipts displaying Plaintiff's American Express card expiration date. ¶ 17.

## ARGUMENT

### I. STANDARDS

In ruling on a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief,

raising that possibility above a 'speculative level'" and "'if they do not, the plaintiff pleads itself out of court.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, ___U.S. ___, 127 S. Ct. 1955, 1964 (2007)). Under the notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action.'" *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint). The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998) (stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

## II.   PLAINTIFF HAS ADEQUATELY PLEAD THAT DEFENDANT ACTED WILLFULLY

FACTA provides a private right of action for willful noncompliance. 15 U.S.C. § 1681n. In order to be willful for purposes of 15 U.S.C. § 1681n, a defendant's violation of FACTA must have been either knowing or reckless. *Follman v. Hospitality Plus of Carpentersville, Inc.,* 532 F. Supp. 2d 960, 962-63 (N.D. Ill. 2007) (citing *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2208-10 (2007)); *see also Iosello v. Leiblys, Inc*., 502 F. Supp. 2d 782, 784 (N.D. Ill. 2007). Liability under Section 1681n(a) for "willfully fail[ing] to comply" with FCRA covers both knowing and reckless violations of the statute and that "a company subject to the FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 127 S. Ct. at 2208.

Here, Plaintiff has alleged that Brazzaz has "willfully violated [FACTA] because [its] conduct was either willful, knowing, or reckless, and [Brazzaz] failed to protect Plaintiff and others similar situated against identity theft and credit card and debit card fraud . . . . " ¶10; *see also* ¶44. Plaintiff further has laid out in simple terms his basis for Brazzaz's willful, *i.e.*, knowing or reckless failure to comply with FACTA:

- Congress provided merchants such as Brazzaz over three years to comply with FACTA, yet as late as October 25, 2007, Brazzaz continued to issue credit card receipts with at least the expiration date;
- All the major card issuers contractually required merchants, including Brazzaz, that accepted their cards to comply with FACTA's terms as early as March 2003;

4

- All the major credit card issuers provided merchants, including Brazzaz, with clear instructions regarding the limiting of card numbers to last four digits and excluding the expiration date on receipts, and provided clear exemplars for Brazzaz and other merchants to follow;

- The major vendors of credit card swipe machines and cash registers frequently informed vendors of their obligations under FACTA and similarly provided examples of the proper FACTA compliant receipts; and

- Many of Brazzaz's competitors have complied with all of FACTA's truncation requirements.

¶¶8, 9, 34-40.

Brazzaz attacks these allegations on the grounds that the complaint pleads Brazzaz's alleged knowledge of FACTA but does not allege it knew the harm caused by violating FACTA. Def. Mem. at 10. As courts in this district and other districts have found, the facts alleged by Plaintiff here are sufficient to allege a willful violation of FACTA. *Follman,* 532 F. Supp. 2d at 962-63. Where, as here, the pleadings concern matters peculiarly within the knowledge of the defendants, such as whether the defendant had particular knowledge, "conclusory pleading on 'information and belief' should be liberally viewed." *Wooley v. Jackson Hewitt, Inc.,* No. 07 C 2201, 2208 WL 836010, at *14 n.5 (N.D. Ill. March 28, 2008) (citing *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005)).

The court's decision in *Follman*, *supra*, is particularly instructive regarding the necessary pleadings for a FACTA claim and establishes the sufficiency of the present complaint. In *Follman*, the plaintiff alleged that he had received a receipt which displayed his card expiration date after the effective date of FACTA. 532 F. Supp. 2d at 962. Moreover, the plaintiff alleged that the defendant knew of the FACTA requirements because "VISA, MasterCard, and the PCI Security Standards Council informed defendant about FACTA." *Id*. at 963. The plaintiff also alleged that the credit card issuing organizations required compliance by merchants prior to FACTA's effective date. Finally, the plaintiff alleged that most of the defendant's "business peers and competitors" programmed their card machines and devices to comply with FACTA. *Id.* at 963. Based on these allegations, and in light of *Bell Atlantic*, the court found that "these allegations 'plausibly suggest' that defendant willfully violated the statute." *Id.*; *see also Iosello*, 502 F. Supp. 2d at 784-85 (finding same allegations sufficient).

Other courts, both before and after the decision in *Bell Atlantic*, have held that allegations nearly identical to those in the Complaint are sufficient to support an inference of willfulness at

this stage of the proceedings. *See Troy v. Home Run Inn, Inc.*, No. 07 C 4331, 2008 WL 1766526, at *1-2 (N.D. Ill. Apr. 14, 2008) (similar fact allegation sufficient to plead willfulness); *Miller v. Sunoco, Inc.*, Civil Action No. 07-1456, 2008 WL 623806, at *2 (E.D. Pa. March 4, 2008) (sufficient allegations of willfulness where defendants "'continue[d] to deliberately, willfully, intentionally, recklessly and negligently violate FACTA by issuing receipts which do not comply with the FCRA,' although many credit card companies, including Visa and MasterCard, advised companies of the need for compliance with the truncation requirement."); *Gamaly v. Tumi, Inc.,* No. C-07-04758 JF, 2008 WL 512718, at *2-3 (N.D. Cal. Feb. 25, 2008) (similar fact allegation sufficient to plead willfulness); *Follman v. Village Squire, Inc.*, No. 07 C 3767, 2007 WL 4522614, at *3 (N.D. Ill. Dec. 18, 2007) (Kendall, J.) (plaintiff's allegations of willfulness under FACTA sufficient under *Bell Atlantic* where his amended complaint alleged nearly identical facts to those alleged here); *see also Lopez v. Gymboree Corp.*, No. 07-739 SI., 2007 WL 1690886, at *2 (N.D. Cal. June 8, 2007); *Ernheart v. Lifetime Brands, Inc.*, 498 F. Supp. 2d 753, 756 (E.D. Pa. 2007); *MGM Mirage,* 524 F. Supp. 2d at 1232-33.

Brazzaz, however, argues that "willfulness" requires an unjustifiable risk of "harm," thus indicating that Congress did not intend to provide for damages for a "willful" violation in the absence of any actual or risk of harm. The defendant in *Ramirez v. Midwest Airlines*, 537 F. Supp. 2d 1161, 1169 (D. Kan. 2008) made precisely the same argument. In *Ramirez*, the court rejected defendant's argument stating that:

> the Court in *Safeco* used the term "risk of harm" only in the context of analogizing "recklessness" in FACTA to the common law meaning of "recklessness" in tort law. The significance of the Court's holding in *Safeco* was in reading the statutory language "willfully fails to comply" as reaching reckless FCRA violations and in rejecting the defendant insurance companies' argument that the use of the term "willfully" limits liability under § 1681n(a) to knowing violations. [*Safeco*, 127 S. Ct.] at 2210. <u>Thus, it is the reckless disregard of statutory duties (not harm) that makes a violation willful</u>. *Id.* at 2208 (referring to reckless disregard of the law as willful), 2215 (discussing reckless disregard in terms of "risk of violating the law"). <u>Nowhere did the Court in Safeco suggest that the "risk of harm" standard from tort law is incorporated into the FCRA.</u>

537 F. Supp. 2d at 1169 (emphasis added). *See also Soualian v. Int'l Coffee & Tea, LLC*, No. CV 07-0502-RGK (JCx), 2008 WL 410618, at *3 (C.D. Cal. Feb. 9, 2008) ("The *Safeco* court used the term 'risk of harm' only in the context of explaining why 'recklessness' under FACTA refers to whether there was a 'reckless disregard of statutory duty.'") (*quoting Safeco*, 127 S. Ct.

6

at 2208).[2]

For all of these reasons, Brazzaz's arguments are without merit. Plaintiff's complaint adequately alleges Brazzaz's willful violation of FACTA, and its motion to dismiss should be denied.

## III.    FACTA'S REQUIREMENTS ARE UNAMBIGUOUS

The language of FACTA is unambiguous:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

15 U.S.C. §1681c(g).

Brazzaz argues that Congress' use of "or" in the statute, the Court cannot find that Brazzaz was "objectively unreasonable" in reading that as long as it truncated account numbers it could print the expiration date. Def. Mem. 4-5. Once again, Brazzaz is on the wrong side of the overwhelming weight of authority. Each and every decision concerning FACTA has found the statutory language to be unambiguous. *See Follman*, 532 F. Supp. 2d at 963-64; *see also Troy*, 2008 WL 1766526, at *3 ("unlike the statutory provision at issue in Safeco, the text of section 1681c(g) is unambiguous"); *MGM Mirage*, 524 F. Supp. 2d at 1234-35 (holding that FACTA is not vague or ambiguous such that the defendant's conduct would not be willful); *Iosello*, 502 F. Supp. 2d at 785-86; *Village Squire*, 2007 WL 4522614, at *3; *Arcilla v. Adidas Promotional*

---

[2] Brazzaz's reliance on *Najarian v. Charlotte Russe, Inc.*, No. CV-07-501-RGK (CTx), order at 2-3 (C.D. Cal. Aug. 16, 2007) (Def. Mem. at 4) and *Wojtczak v. Chase Bank USA, N.A.*, No. 06-C-987, 2007 WL 4232995, at *4 (E.D. Wis. Nov. 27, 2007) for the proposition that its reading of the statute was reasonable is wholly without merit. First, the court in *Najarian*, addressing the defendant's motion for summary judgment, ruled based on the facts presented it and does not review or analyze the impact of *Safeco*. *Najarian*, order at 2-3. Moreover, *Najarian* has been criticized by courts within its district because the court "did not address whether defendant's conduct could be characterized as reckless." *Edwards v. Toys ""R'' Us*, 527 F. Supp. 2d 1197, 1211 (C.D. Cal. 2007) (emphasis added).

In *Wojtczak v. Chase Bank USA, N.A.*, No. 06-C-987, 2007 WL 4232995, at *4 (E.D. Wis. Nov. 27, 2007), the court found that the defendant's reading of the statute was reasonable because "numerous courts" held that the missing information was not required by the FCRA. As set forth in detail in Section III, below, the courts have unanimously held that the truncation language of FACTA is unambiguous and that there is only one reasonable reading of the statute, it required the truncation of account numbers and prohibited the printing of expiration dates.

.

*Retail Operations, Inc.*, 488 F. Supp. 2d 965 (C.D. Cal. 2007); *Aeschbacher v. California Pizza Kitchen, Inc.*, No. CV 07-215, 2007 WL 1500853, at *3 (C.D. Cal. Apr. 3, 2007); *Pirian v. In-N-Out Burgers*, No. SA CV 06-1251, 2007 WL 1040864, at *3 (C.D. Cal. Apr. 5, 2007); *Lopez*, 2007 WL 1690886, at *3; *Korman v. The Walking Co.*, 503 F. Supp. 2d 755, 760 (E.D. Pa. 2007) ("The disjunctive 'or' means 'or,' not 'and.' A business cannot print 6+ digits or the expiration date. In other words, printing 6+ digits violates FACTA. Also, printing the expiration date violates FACTA.") (emphasis added).

In *Follman,* the defendant raised a similar vagueness argument before the court here and offered similar alternative readings of the statute that Brazzaz does. *Id.* at 964. Both Brazzaz and the *Follman* defendant argued that the no expiration date language could be: (i) a complete prohibition on the expiration date; but it could also mean (ii) that the merchant could print either more than the last six numbers of the cardholders card number or the expiration date, but not both. *Id.* at 964; Def. Mem. at 5.

Despite the defendant's arguments and alternative readings of the statute, the court in *Follman* found that the alternative readings were implausible. *Id.* The court held:

> We find that no reasonable person could interpret the statute the way defendant presents.  <u>The plain meaning of the statute is that no merchant may print more than the last five digits of the card number, nor may they print the expiration date of the card on the receipt</u>.

*Follman*, 532 F. Supp. 2d at 964 (emphasis added). Moreover, the court rejected the defendant's alternate reading of the statute as without merit because allowing the "either" printing of more than the last 5 numbers or the expiration date, but not both, rendered the statute meaningless. *Id.* The *Iosello* court has similarly concluded:

> Businesses generally require one's credit card number and the expiration date of that credit card to transact business. <u>Access to both the credit card number and the expiration date of that credit card makes it easier for a thief to commit identity theft</u>. The existence of a law prohibiting the printing of more than the last five digits of the credit card number makes it difficult for a thief to obtain the victim's credit card number. <u>The existence of a law prohibiting the printing of the expiration date of a credit card makes it even more difficult to commit identity theft.</u>

*Iosello*, 502 F. Supp. 2d at 786. (emphasis added).

Brazzaz argues that the ambiguity in the FACTA's truncation requirement is evident from the proposed Credit and Debit Card Receipt Clarification Act of 2007, H.R. 4008, 110th Congress (1st Sess. 2007) (the "Bill") and articles by self-proclaimed identity theft "experts."

8

Def. Mem. at 6-9.  As demonstrated below, Brazzaz's arguments violate both the basic rules of statutory construction and the tenets of what may be reviewed on a motion to dismiss.

First, not a single court that has reviewed the truncation requirements of FACTA has found the language of the statute to be ambiguous and a court may only resort to legislative history if a statute is ambiguous.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 125 S. Ct. 2611, 2626 (2005) ("[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material.  Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms.").  There is no need for recourse to legislative history in interpreting the clear statutory language.  *See T.D. v. LaGrange Sch. Dist. No. 102,* 349 F.3d 469, 482 (7th Cir. 2003) (declining to rely upon legislative history that contradicted the plain language of a statute: "Unless exceptional circumstances dictate otherwise, when we find the terms of a statute unambiguous, judicial inquiry is complete."); *see also Garcia v. United States,* 469 U.S. 70, 76 n.3 (1984) (quoting *Schwegmann Bros. v. Calvert United States v. Logan,* 453 F.3d 804, 805 (7th Cir.2006) ("Even the plainest legislative history does not justify going against an unambiguous enactment.").

Moreover, courts have long held that post-enactment materials, such as the Bill, are of no value in interpreting a statute.  In *Covalt v. Carey Canada Inc.,* 860 F.2d 1434 (7th Cir. 1988), the Seventh Circuit stated:

> Legislative history is valuable only to the extent it reveals the background of the law and the assumptions shared by those who wrote and voted on the bills.  It is a contemporaneous record that helps a court reconstruct the meaning of our always-ambiguous language.  <u>Statements and thoughts that not only did not but also could not have come to the attention of Congress at the time do not reveal the process of deliberations</u>.  By definition, words written after the vote and the President's signature were uninfluential in the process leading to the vote.  <u>That is why . . . subsequent legislative history . . . is not helpful as a guide to understanding a law</u>.  . . . Even the contemporaneous committee reports may be the work of those who could not get their thoughts into the text of the bill.

*Id.* at 1438. See also 2A Norman J. Singer, ed., *Sutherland on Statutory Construction* § 48:20 (6th ed. 2002) ("Post-enactment views of those involved with [the enactment of a statute] should not be considered when interpreting the statute . . . . While contemporaneous sponsor statements are frequently used as extrinsic aids to legislative intent, post enactment statements of legislators on legislative intent have been disapproved.  They are of limited legal value to an understanding [of] the clear meaning and legal effect of statutes.").

> As Judge Kendall found in *Village Squire*, 2007 WL 4522614, at *5:
>
> Because the language of the statute is clear, the Court declines VSI's invitation to ignore the canons of statutory construction and look beyond the statute's plain meaning to other materials, [the Bill] – VSI submitted as "supplemental authority." The Bill, which would amend § 1681n, <u>is not yet law and may never be law. While the Bill does suggest that some merchants may have misunderstood the truncation requirement in § 1681c(g), the Bill would not amend that section</u> . . . . Even if the Court were to consider the Bill in reaching its decision in this case, it would only bolster this Court's conclusion that printing an expiration date on any receipt provided to a consumer cardholder constitutes a violation of § 1681c(g).

*Id*. (emphasis added).³

Defendant's citation to news articles produced by, among others, parties with strong affiliations to the merchants being sued in the FACTA cases are without merit. (Def. Mem. at 7-9, Exs. D, E, F, H, and I). On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must consider only the plaintiff's complaint, documents or materials cited to or replied upon by the plaintiff in drafting the complaint or matters of public record of which the court may take judicial notice. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). None of the articles annexed by Brazzaz were cited to in the Complaint, nor did Plaintiff rely upon them in drafting the Complaint, indeed they did not exist at the time FACTA was enacted. Moreover, the articles are being put forward for the truth of the matter asserted and constitute impermissible hearsay. *See Eisenstadd v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997). The exhibits should be either stricken or ignored by this Court in making a determination on the motion.

Accordingly, the language of FACTA is unambiguous, and Brazzaz's motion to dismiss should be denied.

### III.    PLAINTIFF HAS ALLEGED A SUFFICIENT INJURY

Defendant argues that by failing to plead actual damages, Plaintiff lacks standing under the Constitution to bring his claim. Def. Mem. at 11. To satisfy Article III standing requirements, a plaintiff must show that he: (1) has suffered an "'injury in fact' that is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical; (2) the

---

³ Brazzaz suggestion that Judge Kendall was not aware that, if the Bill were enacted it would require "actual damages" is odd because the language they point this Court to in the statute isw quoted verbatim by Judge Kendall. (Def. Mem. at 7 n. 4). *Compare Village Squire*, 2007 WL 4522614, at *5 *with* Ex. A at 4:7-15.

10

injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Earth Island Institute v. Ruthenbeck*, 490 F.3d 687, 693 (9th Cir. 2007) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000)). Article III standing may exist "solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992) (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). Where Congress creates a legally protected interest through a statute, the plaintiff still must show he or she suffered an injury to meet Article III standing. *Id.*

Plaintiff has sufficiently alleged an injury to satisfy Article III. Plaintiff purchased a meal and received, at the point-of-sale an electronically printed receipt from Brazzaz containing the expiration date of his card. ¶ 17. As the Court in *Midwest Airlines* stated:

> FACTA conferred upon plaintiff the legal right to receive a point-of-sale receipt from Midwest with the expiration date on her credit card omitted. When Midwest's agent handed her a receipt that failed to omit the offending information, she suffered legally cognizable injury.

537 F. Supp. 2d at 1166.

Indeed, every court that has addressed this issue has found that a plaintiff need not plead actual damages to have standing to seek redress for the harm caused from the delivery of a receipt containing a credit card's expiration date. *Troy*, 2008 WL 1766526 at *3-4; Miller, 2008 WL 623806, at *2 (no need to plead actual damages, "[b]ecause FACTA has created an unambiguous legal right to electronically printed receipts that truncate the consumer's credit card number information, the Court finds that Plaintiff has stated facts sufficient to confer standing."); *Ehrheart v. Lifetime Brands, Inc.*, 498 F. Supp. 2d 753, 755 (E.D. Pa. 2007) ("FACTA does not require that a plaintiff have suffered actual monetary damages in order to sue for violation of the Act."); *Korman*, 503 F. Supp. 2d at 759 ("Being handed a receipt that omits certain of one's credit card information is a legally protected interest created by FACTA."); *MGM Mirage*, 524 F. Supp. 2d at 1231 (D. Nev. 2007) ("Every district court to consider the issue has found a plaintiff has standing to pursue a FACTA claim for statutory damages even without showing actual damages.").

The gist of Defendant's argument is twofold: (1) the damages from a class action will be enormous; and (2) there is no harm from issuing a receipt with a credit card's expiration date. Def. Mem. 11-12. Brazzaz's first argument has been rejected by the Seventh Circuit in a similar FCRA action and its second argument is based on impermissible submissions that have not been

11

tested. In Murray v. GMAC Mortgage Corp., 434 F.3d 948, 954 (7th Cir. 2006), the Court reviewed the denial of certification in FCRA case because the district court deemed that the statutory damages could put the defendant at risk of billions in damages without a corresponding harm being shown. *Id.* The Seventh Circuit reversed the district court and held that:

> the constitutional limits [to damages] are best applied after a class has been certified. Then a judge may evaluate the defendant's overall conduct and control its total exposure.

*Id.* Applying *Murray,* Judge Kendall refused to dismiss the *Village Squire* action on similar grounds. *Village Squire*, 2007 WL 4522614, at *4. *See also Troy*, 2008 WL 1766526, at 3 (rejecting defendant's arguments that the case should be dismissed because the damages could be "outlandish," finding "[e]ven assuming this might be an appropriate basis to ignore Congress' determination regarding an appropriate award in a situation in which actual losses are likely hard to quantify, the best time to apply any claimed constitutional limitation on damages is after a class is certified"); *Arcilla*, 488 F. Supp. 2d at 972 ("A statutory penalty violates due process only where it is 'so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'") (citations omitted).

Defendant's second argument is premised on the statement that the printing of the expiration date causes little or no harm. This argument is supported by an untested statement of a so-called expert (Def. Mem. at 11) which is inappropriately submitted on a motion to dismiss. *General Elec*, 128 F.3d at 1080 (7th Cir. 1997); *Eisenstatd*, 113 F.3d 7at 738. Moreover, it the very Bill that Brazzaz relies upon recognizes that the printing of a credit card expiration date causes harm – it does not remove the prohibition. *Village Squire*, 2007 WL 4522614, at *5.

Second, as the court found in *Cicilline v. Jewel Food Stores, Inc.*, No. 07-CV-2333, 2008 WL 895677, at *4 (N.D. Ill. Mar. 31, 2008) (Dow, J.), the inclusion of a credit card's expiration date on receipts does expose consumers to a harm.[4] *Id.* In *Cicilline*, defendant's expert initially averred that the appearance of an expiration date posed no harm. This expert was forced to

---

[4] The cases cited by Brazzaz, *Soualian v. Int'l Coffee & Tea LLC*, No. 07-502-RGK, __ F. Supp. 2d __, 2007 WL 4877902, at *3 (C.D. Cal. June 11, 2007); *Spikings v. Cost Plus, Inc.*, No. 06-8125-JFW, ___ F. Supp. 2d ___, 2007 U.S. Dist. LEXIS 44214 (C.D. Cal. May 25, 2007); and *Howard v. Hooters of Houston*, No. H-07-3399, slip op., at *1 (S.D. Tex. Apr. 5, 2008) apparently consider the theft of expiration dates by identity thieves in a vacuum and not, as *Cicilline* properly noted, as part of an overarching scheme whereby thieves obtain as much information as possible from wallets, stolen mail and garbage cans then piece it together to create a profile. *See* http://www.ag.state.il.us/consumers/defendidtheft0404.pdf.

change his position during his deposition. He agreed that a dumpster diver, who obtained both a receipt with the expiration date and a copy of a cardholder's monthly credit card statement had a much greater opportunity to commit identity theft than if the thief had only obtained the monthly statement.[5] *Id. See also Iosello*, 502 F. Supp. 2d at 786 ("The existence of a law prohibiting the printing of more than the last five digits of the credit card number makes it difficult for a thief to obtain the victim's credit card number. The existence of a law prohibiting the printing of the expiration date of a credit card makes it even more difficult to commit identity theft.").

## IV. A STAY OF THIS ACTION IS UNWARRANTED

Defendant requests that this Court stay the action pending a "resolution of the Bill." Def. Mem. at 14-15. A stay of these proceedings is on the sound discretion of the court. *Tap Pharma. Prod. v. Atrix Labs.*, No. 03 C 7822, 2004 WL 422697, at *1 (N.D. Ill. March 3, 2004). When ruling on such a stay, courts have considered the following factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (2) whether a stay will simplify the issues in question and streamline the trial, and (3) whether a stay will reduce the burden of litigation on the parties and on the court. *Id. See also Wireless Spectrum Tech. v. Motorola Corp.*, No. 00 C 0905, 2001 WL 32852, at *1 (N.D. Ill. Jan. 12, 2001) (the court must consider the "possible damage, hardship and inequities to the parties to the lawsuit and the relationship of the stay to the fulfillment of judicial objectives of simplification of the issues in question and trial of the case.").

To obtain the stay, the movant must "make out a clear case of hardship or inequity in being required to go forward with litigation (*i.e.*, a 'strong showing' of need for a stay) only where 'there is . . . a fair possibility that the stay . . . will work damage to some one else." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936) (Cardozo, J.*); Machinery Movers, Riggers and Machinery Erectors, Local 136 v. Nationwide Life Ins. Co.*, No. 03 C 8707, 2006 WL 2927607, at *2 (N.D. Ill. Oct. 10, 2006) ("The proponent of a stay bears the burden of establishing its need") (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).

Defendant stay requires this Court to believe the Bill passed in a relatively quick fashion. The Bill was proposed in October and sent to Committee in January.[6] As Judge Kendall stated in

---

[5] Monthly statements do not contain the expiration date for the credit card, however the expiration date is required for purchases. *Id.*

[6] *See* http://www.washingtonwatch.com/bills/show/110_HR_4008.html.

13

*Village Squire*: "The Bill . . . is not yet law and may never be law. While the Bill does suggest that some merchants may have misunderstood the truncation requirement in § 1681c(g), the Bill would not amend that section." 2007 WL 4522614, at *5. Indeed, only a small number of bills introduced into Congress ever become enacted. This is borne out by a recent study, showing that during the 107th session (2001-2002), only 4.2% of introduced bills were enacted and that during the 108th session (2003-2004) that number dropped to 3.4%. CRS Report for Congress, Congressional Statistics: Bills Introduced and Laws Enacted, 1947-2003 (March 3, 2004). There is no indication when Congress may vote on the Bill, or whether it will resemble the form touted by Brazzaz. As a matter of course, courts disfavor open-ended stays. *Abbott v. Lockheed Martin Corp.*, No. 06-cv-0701-MJR, 2007 WL 3145017, at *1 (S.D. Ill. Oct. 25, 2007).[7]

In similar circumstances, the courts have refused to stay litigations pending Congressional action. For example, in *EEOC v. Bethlehem Steel Corp.*, 727 F. Supp. 952, 955 (E.D. Pa. 1990), the plaintiff requested the court to hold the action in abeyance as certain Congress had promised to act and certain legislation had been introduced. *Id.* The court noted that no legislation has reached the floor of Congress. *Id*. Moreover, the issues involved are exceedingly complex, making it impossible to predict the outcome of Congressional action. "Even if legislative action does come some day, it is even less certain that the Congress would choose to retroactively apply it to prior situations or to any case pending at the time of the Betts decision." *EEOC v. Bethlehem Steel Corp.*, 727 F. Supp. 952, 955 (E.D. Pa. 1990). The further stated:

> How long are we to wait before giving the defendants the judgment they are clearly entitled to? 5 years, 50 years? Would not the concept of finality in the American system of justice be rendered meaningless if we are going to delay entering judgment because of future actions that a legislative body might take. We might sooner wait for the end of the world to finally terminate litigation.

*Id.* The Court denied the motion to stay. *See also Gabarczyk v. Board of Educ. of City School Dist. of Poughkeepsie*, 738 F. Supp. 118, 121 (S.D.N.Y. 1990) ("In light of the uncertainty of the

---

[7] What differentiates this action from the cases cited in the Def. Mem. at 13 n. 9, is that the cases that Brazzaz relies upon have events that will occur in a set and short period of time. *Levy v. Sterling Holding Co.*, No. Civ.A. 00-994(GMS), 2004 WL 2251268, at *2 (D. Del. Sept. 27, 2004) (quick action expected by SEC). There is no such quick or scheduled time-line here. Defendant's reliance on *Schnadig Corp. v. Collezione Europa U.S.A*, No. 01 C 1697, 2001 WL 766898, at *1 (N.D. Ill. July 5, 2001) is unfounded in that involved the staying of an action in favor of a first filed identical action in another district, an issue that is subject to a different standard.

nature and timing of Congressional action, we decline to hold this action in abeyance."); *Warren v. Oil, Chemical and Atomic Workers, Union-Industry Pension Fund*, 729 F. Supp. 563 (E.D. Mich. 1989) (declining to hold matter in abeyance pending outcome of legislative effort to overturn Betts). As there is no certainty that Congress will act quickly if at all, the court should deny the motion to stay this action.

## CONCLUSION

Defendant Brazzaz, LLC's motion to dismiss the Class Action Complaint is fatally flawed and wholly unsupported by the law of this and other circuits. Plaintiff has sufficiently alleged facts that support the allegations that Brazzaz, LLC willfully violated FACTA and that FACTA is unambiguous. The motion to dismiss the Class Action Complaint should be denied. In addition, Brazzaz, LLC has not met its burden to obtain a stay of this action. Whether Congress ever will act on the proposed amendment to FACTA, and shape and terms of that amendment do not support staying this litigation.

Respectfully submitted,

JOSEPH DI COSOLA


By:   /s/ David M. Jenkins
          One of His attorneys

Anthony G. Barone (ARDC No. 06196315)
David M. Jenkins (ARDC No. 6211230)
**BARONE & JENKINS, P.C.**
635 Butterfield Road, Suite 145
Oakbrook Terrance, Illinois 60181
630/472-0037

Marvin L. Frank
Lawrence D. McCabe
**MURRAY, FRANK & SAILER, LLP**
275 Madison Avenue, Suite 801
New York, NY 10016
212/682-1818

## **CERTIFICATE OF SERVICE**

    I, David M. Jenkins, hereby certify that on May 5, 2008, the foregoing Memorandum of Law in Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

                                                        /s/ David M. Jenkins